## Bosler *v.* Rahn, Appellant.

Argued April 20, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and MCBRIDE, JJ.

*Paul P. Wisler,* with him *Anthony J. Giangiulio,* for appellant.

*James R. Caiola,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 28, 1959:

The Burgess and the Council of the Borough of Norristown are at sixes and sevens over controlling the hours of duty of the police force in the town. The Burgess contends that since he is charged with responsibility for maintaining law and order, his command in this respect may not be challenged. The Council, on the other hand, maintains that since it appoints the policemen and bears the responsibility of providing for their compensation, it has exclusive authority to decide the hours of their employment. There is some merit in both positions, and it would appear that the Borough Code is not as explicit as could be desired in marking the line of demarcation between the understandably jealous claims of authority on the part of, respectively, the legislative and executive departments of municipal government.

On October 17, 1958, the Burgess of Norristown, by an appropriate order, reduced each policeman's work week from 48 hours to 40 hours. The treasurer of the borough, after receiving an opinion on the subject from the borough solicitor, announced he would

refuse to issue pay checks to the policemen under the new order. He asserted that the order encroached upon the prerogatives of Council which, in fixing salaries, should have exclusive power to say how long the men should work for those salaries.

To settle the controversy, the Burgess and the treasurer brought an amicable action of mandamus upon a case stated in the Court of Common Pleas of Montgomery County, which resulted in the court's ordering the treasurer to issue regular semi-monthly pay checks to the Norristown police force. The treasurer appealed.

Under Section 1125 of The Borough Code, 53 P.S. §46125, the Borough Council is authorized, inter alia, to establish a police department, appoint policemen, and designate a chief of police. Section 1101, as amended, of the Borough Code, 53 P.S. §46101, provides: "Appointed officers and employes of the borough shall receive such compensation for their services as the council shall prescribe."

On February 5, 1958, the Council enacted Ordinance No. 1349 which fixed the annual salary of all members of the police force, totalling 52 men. The ordinance made no reference to hours of duty. It is generally accepted that policemen are subject to call 24 hours a day, but, of course, no one expects that these guardians of the peace, as a routine schedule, should be at their posts around the clock. Obviously there must be hours for rest and at stated times there must be vacations. And there must be a coordinated schedule which will assure the borough protection at all times while allowing the officers the necessary interludes for their private affairs. Who is to plan the details of the coordination?

The answer to that question is found in another question: Who is responsible for maintaining order in the borough? Quite clearly it is the Burgess who, un-

der Section 1028 of the Code, is required to "preserve order in the borough; to enforce the ordinances and regulations; to hear complaints; to remove nuisances; and to exact a faithful performance of the duties of the officers appointed."

In order that the Burgess may "exact a faithful performance of the duties of the officers," Section 1028 is implemented by Section 1125 of the Code which declares: "The burgess of the borough shall have full charge and control of the chief of police and the police force, and he shall direct the time during which, the place where, and the manner in which, the chief of police and the police force shall perform their duties."

In exercising this "full charge and control" the Burgess may have felt that maximum efficiency in the police department would more certainly be achieved by a 40-hour week than by a 48-hour week. In reaching this conclusion he may have reasoned that the strain, stress and dangers involved in a policeman's vigil and the tension under which he operates at all times are such that a work schedule of more than 40 hours a week diminishes the officer's capacity properly to protect the territory assigned to him to safeguard. The Burgess may have felt that the expenditure of physical and nervous energy, if persisted in beyond a 40-hour week, could decrease the fighting potentialities against crime of the entire police department.

Whether the Burgess may have exaggeratedly appraised the physical and mental toll taken from a policeman's well-being by the application of his full energies to a 48-hour work week is not for us to decide in the circumstances of this case. The Code places within the framework of the Burgess's office the responsibility of maintaining the police force at the peak of efficiency and physical effectiveness and authorizes

him to "direct the time during which, the place where, and the manner in which, the chief of police and the police force shall perform their duties."

The appellant treasurer, as spokesman for the Council, conjures up the fear that if the Burgess is allowed to curtail the policeman's week to 40 hours, he may decide to decrease it to 30 hours a week, 20, or even 10 hours per week. Of course, there is no proposition that cannot be reduced to a point of absurdity, but rules of behavior in an organized society are not decided by reductio ad absurdums. Because, according to some dietetic theories, a person may actually feel better by omitting a meal now and then does not mean that the state of his health would progressively improve by the continuing diminution of meals consumed.

A 40-hour work week, according to present day standards in the field of employment, is not unreasonable, but a 15-hour week or a 5-hour week for the police force of a town would open the houses of the citizens to burglars, thieves, and ruffians, as well as invite riot and tumult in the streets. There is bound to be a point on the thermometer where the descending mercury brings no relief from excessive heat but inflicts torture from excessive cold. To argue that because the Burgess may legally cut away 8 hours from a policeman's week schedule he may legally continue to slice at the work week until finally he can do away with poicemen altogether is sheer grotesquery. A hypothetical burgess who would reduce the work week of the forces of security in a town to the point where they could not uphold law and order would not only not be supported in his action by the courts, but he would quickly find himself confronting serious legal charges of misfeasance and malfeasance in office.

The appellant treasurer also argues that by reducing the hours of a policeman's employment, the Bur-

gess has automatically changed the rate of compensation. This, of course, does not respond to reality because the compensation of the Norristown policeman is established not on a weekly basis but on an annual rate of pay. However, on the side of the appellant, it must be acknowledged that if each policeman works less hours, it may be necessary to employ additional policemen to fill in the void created by removal of these hours from the previous schedule, because protection for the town is constant and never-diminishing. To this extent the Burgess has given the Norristown a fiscal headache, and it can be regretted that the Borough Code has not provided for a more understanding and pragmatic cooperation between the executive and the legislative branches of municipal government in the field of police administration.

Nevertheless, as the law now reads, we have no difficulty in deciding that the Burgess of Norristown acted within the scope of authority conferred upon him by the Borough Code, and the judgment of the court below is, therefore, affirmed.

Mr. Justice McBride dissents.