## Salopek *v.* Alberts, Appellant.

Argued March 16, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Harry Alan Sherman,* for appellant.

*Clarence H. Clasper,* for borough, appellee.

*T. Robert Brennan,* for appellee.

*Samuel Strauss,* for amicus curiae.

OPINION BY MR. JUSTICE JONES, April 20, 1965:
This appeal arises in a mandamus action instituted by the chief of police of a borough to compel the mayor

of such borough to assign to him the duties of chief of police.[1]

In 1953 John Salopek was appointed a full time police officer of White Oak Borough (Borough), Allegheny County. On January 24, 1958, Salopek was regularly appointed by the borough council as chief of police of the Borough and, until January 1, 1962, did perform the duties of the chief of police of the Borough's five man police force. Beginning January 1, 1962, Fred B. Alberts (Alberts), the mayor of the Borough, assigned Salopek to a patrolman's duties, and, during January, February and March 1962, he was assigned to a beat which required him to walk from midnight to 8:00 a.m. in a sparsely settled rural area and from April 1962 until the date of hearing in the court below Salopek was assigned to patrol duty by motor vehicle from 4 p.m. to midnight. On January 15, 1962, the borough council appointed Salopek to perform, in addition to his duties as chief of police, the duties of street commissioner.[2]

Beginning on January 22, 1962, and continuing each month thereafter until April 17, 1962, Alberts *on sixteen occasions* suspended Salopek, without pay, until the next regular meeting of council, *apparently*[3] for identical reasons, i.e., Salopek's failure to perform the duties of a patrolman assigned to him by Alberts. Beginning on February 19, 1962, and at each regular meeting of the borough council thereafter, until and includ-

---

[1] The Borough intervened, with leave of court, as a co-plaintiff and filed its complaint in mandamus. The Western Pennsylvania Chiefs of Police Association intervened, with leave of court, as amicus curiae.

[2] An appointment to such dual positions is authorized by the Borough Code, Act of May 4, 1927, P. L. 519, §1142, as amended, 53 P.S. §46142.

[3] At trial Alberts offered no explanation nor did he testify in support of his position.

ing April 15, 1963, the borough council on 15 occasions[4] reinstated Salopek, with back pay, to his duties as chief of police.

In the meantime, in an attempt to clarify the situation, the borough council passed an ordinance on December 17, 1962,[5] which specifically outlined the duties of the chief of police, both in an administrative and supervisory capacity, as well as the duties of a lieutenant, sergeant, patrolman and school-crossing guards. Despite such ordinance Alberts continued to assign Salopek to duties consistent with those of a patrolman and not of a chief of police.

Salopek instituted this mandamus action against Alberts in the Court of Common Pleas of Allegheny County. After a hearing, the court below entered an order directing Alberts (1) to cease and desist from suspending Salopek because of Salopek's refusal "to act as a patrolman", or "to regularly work in a manner which deprives him of his administrative and supervisory role as chief of police" and (2) to assign Salopek to duties defined for the chief of police by borough ordinance. Alberts has appealed from that order.

Alberts presents four questions upon this appeal: (1) whether the Borough Code (Act of May 4, 1927, P. L. 519, §§101-3301, as amended, 53 P.S. §§45101-48501) transfers control of the chief of police from the mayor to council? (2) whether the borough council, by ordinance, can control the scheduling of working hours of the chief of police by the mayor? (3) was the mayor warranted in suspending the chief of police who had refused to work a midnight shift and who insisted

---

[4] Subsequent to Salopek's suspension on April 17, 1962, and prior to the time of the next regular meeting of council, this action was instituted.

[5] This ordinance was originally enacted November 19, 1962, was vetoed by Alberts and unanimously was passed over such veto on December 17, 1962.

596

upon a daylight shift to correspond with his daylight shift as street commissioner? (4) whether the order of the court below should be reversed and a new trial granted because the trial judge in his adjudication departed from the record to castigate the mayor? Alberts' first three questions, involving the same basic problem of borough police administration and control, will be disposed of as a unit.

In *Bosler v. Rahn*, 395 Pa. 600, 605, 151 A. 2d 627, this Court recently said: ". . . it can be regretted that the Borough Code has not provided for a more understanding and pragmatic cooperation between the executive and the legislative branches of municipal government in the field of police administration." The instant controversy stems from this infirmity in the Borough Code.

Subject to its civil service provisions, the Borough Code grants to borough councils the authority to "appoint and remove, or suspend, or reduce in rank, one or more suitable persons, citizens of this Commonwealth, as borough policemen" and to "designate one of said policemen as chief of police". On the other hand, the Borough Code gives the "burgess", now called mayor, "full charge and control of the chief of police and the police force" and provides "he shall direct the time during which, the place where, and the manner in which, the chief of police and the police force shall perform their duties." (Borough Code, supra, 53 P.S. §46125).

In addition, the Borough Code empowers the borough council, by ordinance, to "establish a police department consisting of chief, captain, lieutenant, sergeants, or any other classification desired by the council, and council may, subject to the civil service provisions of [the Borough Code] . . . designate the individuals assigned to each office, but the burgess shall continue to direct the manner in which the persons as-

signed to the office shall perform their duties." (Borough Code, supra, 53 P.S. §46125).

Certain facts cannot be challenged on this record: (1) the appointment of Salopek as chief of police was legally made by council; (2) such appointment, during the period of this controversy, remained in full force and effect; (3) whatever doubt, if any, either the mayor or council or both entertained as to the duties of the chief of police was resolved by passage of the ordinance of December 17, 1962; (4) that ordinance specifically delineated and described the duties of all ranks in the police force, including the duties of the chief of police; (5) the duties assigned to Salopek were the duties of a patrolman and not of the chief of police.

That Alberts had *authority* to suspend Salopek is clear but such right to suspend is conditioned in that the suspension must be *for cause,* the suspension continues only until the next regular councilmanic hearing and, at such meeting, the council, subject, of course, to civil service requirements, passes upon the justification or lack of justification for the suspension. *On fifteen occasions,* Alberts suspended Salopek, each time for the same reason, and, on each occasion, the council determined that the suspension was not for just cause and reinstated Salopek.[6]

Alberts seeks to justify his suspensions of Salopek on the ground that, as mayor, he was empowered to "direct the *time* during which, the *place* where, and the *manner* in which, the chief of police and the police force shall perform their duties" and, when he directed

---

[6] On this subject, generally see: *Williams v. City of Uniontown,* 79 Pa. Superior Ct. 193; *Roat v. Brussock,* 26 Luz. L. Reg. 253, 16 Pa. D. & C. 814; *Williams v. Uniontown Borough,* 24 Pa. Dist. 703; *Kravitski v. James,* 29 Luz. L. Reg. 137; *Grumblis v. Borough of Luzerne,* 35 Luz. L. Reg. 409; *Sterling v. Morgan,* 59 Lack. Jur. 89; *Patrick v. Borough of Mt. Carmel,* 29 Northumb. L.J. 183; *Patrick v. Bradley et al.,* 31 Northumb. L.J. 5.

Salopek to walk the midnight to 8 a.m. beat in the rural area and when he directed Salopek to patrol by car from 4 p.m. to midnight, he was acting with full legal authority. Salopek's refusal to accept such directions constituted the ground which, in the eyes of the mayor, justified his suspension. Alberts' contention fails to take into account that the legislature has empowered the council, not the mayor, to establish a police department creating various ranks of police officers and such authority necessarily carries with it the right to designate the "duties" to be performed by police officers of the several ranks. Council, acting under such authority, did, by the ordinance of December 17, 1962, create the various ranks and specifically set forth the *duties* assigned to the various ranks of officers. The legislature foresaw the likelihood of boroughs throughout the Commonwealth taking such action and provided that, in the event of the establishment of a police department, "the burgess [now mayor] shall continue to direct the *manner* in which the persons assigned to the office shall perform their duties." (53 P.S. §46125).[7]

In the case at bar, council has described the *duties* of the chief of police and the authority of the mayor extends only to directing the *manner* in which the chief of police shall perform the council-prescribed *duties* of the chief of police. What Alberts did was to direct Salopek to perform the council-prescribed *duties* of a patrolman and not those of the chief of police; in so

---

[7] If there is no establishment of a police department by council, it would seem the mayor could direct "the *time* during which, the *place* where, and the *manner* in which" the police perform their duties. The restriction by the legislature, in the event a police department is established, of the authority of the mayor to direction of the *manner* in which the police perform their duties and the omission of reference to direction by the mayor of the *time* and *place* for performance of police duties may have some significance.

doing, Alberts exceeded his authority and Salopek was justified in refusing to perform the *duties* of a rank to which he was not assigned. Were it otherwise, the mayor could direct a council-appointed patrolman to perform the duties of the chief of police and relegate the latter to the duties of the former, thus negating the councilmanic right to appoint a chief of police and patrolman. Alberts not only exceeded his authority under the law but this record reveals his actions were arbitrary and unreasonable. The duties to be performed by the several ranks of police officers are within the prerogative of the council to designate; the *manner* in which the *designated duties* are to be performed is the prerogative of the mayor.

Moreover, the Borough Code (53 P.S.§46028) provides that: "It shall be the duty of the burgess [mayor] : I . . .; to enforce the ordinances and regulations [of the borough]." After the passage of the ordinance of December 17, 1962, the legality *of which is not and cannot now be* questioned,[8] it became Alberts' duty to enforce this, as well as any other ordinance of the borough. Alberts' refusal, evidenced by his conduct, to recognize the duties assigned to Salopek as chief of police by the council in this ordination constituted a dereliction in the performance of his official duties and furnishes additional reason for the issuance of mandamus.

We are satisfied that the court below acted properly in entering its order. Any continuance of this duel for power between council and the mayor will result in further public injury.

We are further requested to reverse the order of the court below and grant a new trial. The reason assigned is that the court below in its adjudication made

---

[8] Borough Code, supra, 53 P.S. §46010; *Milford Township Appeal*, 389 Pa. 135, 132 A. 2d 214.

certain statements concerning the mayor which were "extrajudicial" and contained "scandalous aspersions". We have read the adjudication and find therein statements made by the court, unsupported by the record, which should not have been made and the court's castigation of the mayor in the manner in which it was done had better been left undone. However, the question herein at issue is one of law, not fact, and the law clearly is against Alberts' position. Under such circumstances, the grant of a new trial would serve no practical purpose.

Order affirmed.

Mr. Chief Justice BELL and Mr. Justice MUSMANNO dissent.