## Bell *v.* Flood.

Argued March 6, 1973, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Oliver N. Hormell,* with him *Hormell, Tempest, Simmons, Bigi & Melenyzer,* for appellant.

*Daniel W. Cooper,* with him *Stanford A. Segal,* and *Gatz, Cohen, Segal and Koerner,* for appellee.

OPINION BY JUDGE KRAMER, April 16, 1973:

This is an appeal from an order of the Court of Common Pleas of Washington County reversing an order of the Civil Service Board (Board) of the Borough of Canonsburg (Borough) which had sustained the Borough Council's suspension of William A. Flood (Flood), the Chief of Police of the Borough. Council had suspended Flood for a period of five days, and thereby dismissed the balance of a 30-day suspension given to Flood by Louis R. Bell, Jr. (Bell), the Mayor of the Borough. The facts are garnered from the briefs and the opinion of the court below.[1] On or about No-

---

[1] As has become the practice by all too many attorneys appearing before this Court, the testimony which may have been taken at the hearing before the Civil Service Board was not made a part of the record before this Court. Also, the adjudication of the Board setting forth its findings of fact and conclusions of law was omitted from the record. In view of the fact that the court below found that the Board had made errors in its findings, it is very difficult for this Court on appeal to determine whether the court below committed error in its conclusions. In view of the fact, however, that counsel for both parties have requested this Court to make a determination on questions of law, and in our view that to remand this matter, for the purposes of perfecting the record, would not serve any additional useful purpose, we will proceed to make the requested determination.

vember 1, 1971, Flood advised the Mayor that he intended to make changes in the team assignments of patrolmen of the Borough police force. Shortly thereafter, the Mayor ordered Flood to withhold making such team changes until the Mayor could meet with the patrolmen to ascertain their reasons for requesting changes in assignment. Having waited about six weeks after the Mayor's order, during which time the Mayor did not meet with the patrolmen as he had indicated was his intention, the Chief made the changes in team assignments. The Mayor determined that this was disobedience of his orders and, by letter dated December 10, 1971, suspended Flood for a period of 30 days. The next Borough Council meeting was held on December 13, 1971, at which meeting the subject of Flood's suspension was not discussed. On that same date, December 13, 1971, the Mayor by letter reinstated Flood and postponed his suspension of 30 days until January 2, 1972. At its next meeting, held January 10, 1972, Borough Council took up the matter of the suspension and upheld the suspension of Flood for a period of five days and dismissed the balance. Apparently, at the date of the Council meeting (January 10, 1972), Flood had already served five days of his suspension. Flood took an appeal to the Civil Service Board, and on May 3, 1972, the Board sustained the action of Borough Council. Flood then took an appeal to the court below, which apparently did not take or receive any additional testimony or evidence. The court below determined that the Board had committed error in its findings, and reversed its adjudication, thereby restoring to Flood his prior status, and all lost wages and salary. Bell filed exceptions, and a court en banc was impaneled to hear argument. One of the three judges disqualified himself, and the remaining two judges were evenly divided. The effect of this evenly divided court was to

affirm the original decision of the hearing judge. Bell then appealed to this Court.

The question of law presented to us by the parties is whether the mayor or the chief of police of a borough has the primary authority to make changes in the team assignments of borough patrolmen; and secondly, if the mayor has such primary authority, could he suspend the chief for disobeying an order, if the chief acted as Flood did in this case.

The pertinent statutory authority of borough councils and mayors with regard to control of police chiefs and the police is found in Section 1121 of The Borough Code, Act of February 1, 1966, P. L. (1965) 1656, as amended, 53 P.S. §46121, which reads in pertinent part as follows:

"The borough council may designate one of said policemen as chief of police. The mayor of the borough shall have full charge and control of the chief of police and the police force, and he shall direct the time during which, the place where and *the manner* in which, the chief of police and the police force shall perform their duties, except that council shall fix and determine the total weekly hours of employment that shall apply to the policemen.

. . . .

"The borough may, by ordinance, establish a police department consisting of chief, captain, lieutenant, sergeants, or any other classification desired by council, and council may, subject to the civil service provisions of this act, if they be in effect at the time, designate individuals assigned to each office, but the mayor shall continue to direct the manner in which the persons assigned to the office shall perform their duties. The mayor may, *however,* delegate to the chief of police or other officers supervision over and instruction to subordinate officers in the manner of performing their duties." (Emphasis added.)

Flood points out that an ordinance passed by Borough Council directs the Chief to "[p]repare or cause to be prepared and post schedule of the subordinate officers' working hours," and further to "[d]etail such orders to the members of police as may be necessary to carry out the duties" of the Chief. However, in reviewing the ordinance we find that Flood failed to point out that the ordinance in question states that the duties prescribed by Borough Council were to be "subject to reasonable and lawful rules as may be issued by the Mayor under his powers in the Borough Code . . . ." As was pointed out in the case of *Bosler v. Rahn*, 395 Pa. 600, 151 A. 2d 627 (1959), our Supreme Court said: "[I]t can be regretted that the Borough Code has not provided for a more understanding and pragmatic cooperation between the executive and legislative branches of municipal government in the field of police administration." 395 Pa. at 605, 151 A. 2d at 629. In view of the fact that the legislative language is somewhat ambiguous, it falls upon the courts to determine what the Legislature meant. Our review of the statute quoted above permits us to conclude that it is the mayor's prerogative to determine the *manner* in which the designated duties are to be performed by the members of the police force of the borough. Under the facts of this case, we also conclude that the assignment of police officers to teams comes within the meaning of the word "manner." The primary responsibility for carrying out the police force functions of the borough clearly falls on the mayor. *See* Sections 1028, 1029 of The Borough Code, 53 P.S. §§46028 and 46029. *Also see Salopek v. Alberts*, 417 Pa. 592, 209 A. 2d 295 (1965).

The facts as presented in this case, i.e., a time lapse of six weeks during which the Mayor did nothing with regard to the suggested team assignments, permits us

to question whether or not there was such disobedience of orders so as to justify a suspension. It certainly must be recognized that after waiting for such a long period of time, the Chief of Police might have had authority to proceed as he planned, subject to a countermand by the Mayor. Unfortunately, as we have noted herein, we do not have the benefit of any testimony, and therefore have no way of determining whether or not the findings of the Board were based upon the evidence presented.

The matter of the extent of the suspension presents a different problem. The mayor's powers of suspension may be found in The Borough Code in Section 1124, 53 P.S. §46124, wherein it is stated: "In addition to the powers of council to suspend policemen, *the mayor may,* for cause and without pay, *suspend any policeman until the succeeding regular meeting of the council,* at which time or thereafter the council may, subject to the civil service provisions of this act, if they be in effect at the time, suspend, discharge, reduce in rank or reinstate with pay, such policeman. In any case where the council has reinstated a policeman, after having been suspended by the mayor, the mayor shall not thereafter suspend such policeman for reasons arising from the same act for which the first suspension was made, or for reasons that the council, in reinstating such policeman, shall have determined not to be grounds for suspension." (Emphasis added.) Section 1191 of The Borough Code, 53 P.S. §46191, sets forth the procedure under which a suspension may be adjudicated. Once again, we are forced to assume that all of the procedural requirements were met, e.g., that written charges were made and served, and that a hearing was held with a stenographic record made. In any event, the statutory power of the Mayor to suspend Flood could not exceed the period of time (three days) until the

next succeeding regular meeting of Council. Here, the Mayor suspended Flood for 30 days, which he had no power to do. Three days later (on the same date as the next regular Council meeting) he postponed the suspension for a period of 15 days, to a date *prior* to the next, or second Council meeting after the original suspension. As we understand the record, Council then upheld five days of the illegal suspension and dismissed the balance. This neither the Mayor nor Council could do.

In conclusion, then, we hold as a matter of law that the assignment of police officers to teams, under the facts of this case, comes within the purview of the statutory language permitting the Mayor to direct "the manner in which, the chief of police and the police force shall perform their duties . . . ." Secondly, we also hold that the suspension of Flood for a period of 30 days was not in compliance with The Borough Code, and that Borough Council could not correct the Mayor's error or affirm any part of such an illegal suspension. As a result of our holding, the order of the court below is affirmed.