## Somber v. Fabian

*Carl Putz,* for plaintiff.
*Allan B. Greenwood,* for defendants.

SUGERMAN, *J.*, December 11, 1975 — Plaintiff, Joseph F. Somber, as Mayor of the Borough of Phoenixville ("Borough"), filed the instant complaint in equity against defendants, Joseph A. Fabian, Richard N. Don and Peter J. Bradley in their

respective capacities of president of the borough council ("council"), of the borough, borough manager and finance officer, seeking to enjoin the payment by such officials of the salary of the chief of police of the borough for the period September 11 through September 20, 1975, and expenses to be presumably incurred by the chief while attending a convention of the International Association of Chiefs of Police to be held during the same period.

Defendants, by answer, admitted the material factual allegations of the complaint, but challenged the mayor's conclusion that the Borough Code denies to council the power to act as it did.

The court granted a temporary injunction restraining the payment of the sums involved in order to preserve the status quo, and, by stipulation of the parties, a full and final hearing was held in the matter on August 19th, 1975, and the matter is now ripe for adjudication.

## ISSUES

The issues requiring adjudication are simply stated: (1) Does the power to determine when the chief of police of a borough may leave his duties and take a vacation rest with the mayor or the borough council?; (2) may the borough council lawfully pay expenses to be incurred by the chief of police in attending a convention?; (3) does the borough council have the power to grant the chief of police a vacation with salary between specified dates notwithstanding an order from the mayor to the chief that he remain on duty between such dates? . . .

## DISCUSSION

The factual setting at bar is simply stated and its

very recitation brings into immediate focus the principle issue to be resolved: The Borough Council of the Borough of Phoenixville created by ordinance a police force in the borough and, at the same time, created the office of chief of police. In April 1975, council appointed Joseph J. Kane to fill such office. There was apparently no specific contract of employment between Kane and the borough, either oral or in writing, setting forth the terms and conditions of employment, and no such evidence appears in the record. In June 1975, Chief Kane, a member of the International Association of Chiefs of Police, asked council for permission to attend a conference of that association to be held in Denver, Colorado, between September 11, 1975, and September 20, 1975, at the borough's expense.

Learning of the chief's request, the mayor of the borough, by written and oral statement to council, asserted initially that the power to determine the time when the chief of police performed his duties rested with the mayor and not with council. The mayor further asserted that he did not believe it to be in the best interests of either the police force or the community at large to permit the chief to leave his duties in order to attend the conference. Finally, the mayor advised council that he flatly disapproved the chief's request to take leave of his duties to attend the conference, although the request had not been presented to him.

Notwithstanding the mayor's sentiments on the subject, the council appropriated the sum of approximately $750 to pay the expenses to be incurred by the chief while attending the conference, and adopted a resolution granting the chief a vacation with pay during the period of the conven-

tion. Although the recitals preceding the resolving clause of the resolution make reference to the convention, the resolving clause itself simply grants the chief a vacation with full pay.

On such record, then, the contending parties, executive on the one hand and legislative on the other, ask the court to define the respective powers of each in dealing with a borough chief of police, and to identify the party in whose hands rest the specific powers here involved. Before embarking upon either task, however, we must initially decide whether equity is an appropriate forum.

While the parties do not challenge the jurisdiction of the court sitting in equity to hear and adjudicate the issues, it is, nevertheless, our duty to make such determination: Balazick v. Dunkard-Bobtown Municipal Authority, 414 Pa. 182, 199 A. 2d 430 (1964).

If a remedy at law is shown to exist, complete and adequate in nature, equity will not assume jurisdiction: Harris-Walsh, Inc. v. Dickson City Borough, 420 Pa. 259, 216 A.2d 329 (1966). The remedy must be adequate "to the task of resolving plaintiffs' objections." Bliss Excavating Co. v. Luzerne County, 418 Pa. 446, 211 A. 2d 532 (1965).

At bar, the mayor, as plaintiff, seeks an order prohibiting the payment of borough funds for purposes allegedly beyond the power of borough council to advance. The mayor asserts that inasmuch as council had no authority to adopt the resolution of August 12, 1975, granting the chief of police a vacation, by logical extension, council has no authority to pay either his salary during the vacation period so fixed, or expenses to be incurred by him while attending a conference during such vacation

period. Thus, the mayor seeks to prevent the alleged improper or illegal expenditure of public funds.

Municipalities and their officers may be enjoined, in equity, from acting in excess of the powers granted them: Bechak v. Corak, 414 Pa. 522, 201 A. 2d 213 (1964); Mullen v. Board of School Directors of DuBois Area School District, 436 Pa. 211, 259 A. 2d 877 (1969). Such is the relief sought by the mayor instantly, and thus equitable jurisdiction is properly invoked.

We note in passing that, ordinarily, suits similar to the litigation before us are brought by taxpayers. See for example: Mayer v. Hemphill, 411 Pa. 1, 190 A. 2d 444 (1963). Defendants, however, do not raise the issue of the mayor's standing to commence and prosecute the litigation, and we believe the issues inherent in the matter to be of sufficient importance so as to require us to reach the substance thereof. Accordingly, we do not here decide the question of standing, and in view of our disposition below, such decision is unnecessary: Mayer v. D'Ortona, 408 Pa. 518, 184 A. 2d 582 (1962).

It is fundamental that the powers of the mayor and the borough council are only such as are granted and bestowed by the Borough Code.[1] Section 1121 of the Borough Code, 53 P.S. §46121, provides, in pertinent part, the following:

[1121] ■ "Borough council may, subject to the civil service provisions of this act, if they be in effect at the time, appoint and remove, or suspend, or reduce in rank, one or more suitable persons,

1. February 1, 1966, P. L. (1965) 1636 (No. 581), sec. 101 et seq., 53 P.S. §45101 et seq.

citizens of the United States of America, as borough policemen, who shall be ex officio constables of the borough, and shall and may, within the borough or upon property owned or controlled by the borough or by a municipal authority of the borough whether such property is within or outside the limits of the borough, without warrant and upon view, arrest, and commit for hearing any and all persons guilty of breach of the peace, vagrancy, riotous or disorderly conduct or drunkenness, or who may be engaged in the commission of any unlawful act tending to imperil the personal security or endanger the property of the citizens, or for violating any ordinance of the borough for the violation of which a fine or penalty is imposed, and notwithstanding any statute pertaining to the same or similar offenses. Any person so arrested shall be received for confinement by the keepers of the jails, lockups, or station houses within the county.

■ "The borough council may designate one of said policemen as chief of police. The mayor of the borough shall have full charge and control of the chief of police and the police force, and he shall direct the time during which, the place where and the manner in which, the chief of police and the police force shall perform their duties, except that council shall fix and determine the total weekly hours of employment that shall apply to the policemen.

■ "The borough may, by ordinance, establish a police department consisting of chief, captain, lieutenant, sergeants, or any other classification desired by the council, and council may, subject to the civil service provisions of this act, if they be in effect at the time, designate the individuals as-

signed to each office, but the mayor shall continue to direct the manner in which the persons assigned to the office shall perform their duties. The mayor may, however, delegate to the chief of police or other officers supervision over and instruction to subordinate officers in the manner of performing their duties. The mayor may appoint special policemen during an emergency in which the safety and welfare of the borough and the public is endangered and auxiliary policemen may be appointed as provided by general law."

The mayor points initially to that part of section 1121 numbered above as paragraph 2, and emphasizing the words "The mayor of the borough shall have full charge and control of the chief of police . . . and he shall direct the time during which, the place where and the manner in which the chief of police and the police force shall perform their duties . . ." argues that while the council may well grant the chief a vacation, the mayor is vested with the sole power to determine when the chief may enjoy such vacation. Additionally, the mayor cites the court to two appellate decisions he suggests bear on the subject and support his position: Bosler v. Rahn, 395 Pa. 600, 151 A. 2d 627 (1959), and Bell v. Flood, 8 Pa. Commonwealth Ct. 423, 303 A. 2d 244 (1973).

In Bosler, a case decided prior to the 1966 amendments to the Borough Code, the Borough Council of the Borough of Norristown fixed the weekly hours of work for each policeman at 48, but the mayor (then called the "Burgess") by order reduced such weekly hours to 40. Asserting that such order encroached upon the prerogatives of borough council, the treasurer of the borough refused to issue pay checks to the policemen under

the mayor's order. In an effort to resolve the dispute, the mayor and the treasurer brought an amicable action in mandamus.

The Supreme Court of Pennsylvania, speaking through Mr. Justice Musmanno, held that the power to fix the hours of work of policemen rested with the mayor and not the council, as it is the mayor who is required to preserve order in the borough and exact a "faithful performance" of the police, the court saying as it did:

"In order that the Burgess may 'exact a faithful performance of the duties of the officers,' Section 1028 is implemented by Section 1125 of the Code which declares: 'The burgess of the borough shall have full charge and control of the chief of police and the police force, and he shall direct the time during which, the place where, and the manner in which, the chief of police and the police force shall perform their duties.' "Id. at 603, 151A.2d 627, at 628. And further:

"The Code places within the framework of the Burgess's office the responsibility of maintaining the police force at the peak of efficiency and physical effectiveness and authorizes him to 'direct the time during which, the place where, and the manner in which, the chief of police and the police force shall perform their duties'." Id. at 603-04, 151 A. 2d 627, at 629.

Apparently dissatisfied with the court's interpretation, the general assembly then amended section 1125 of the Borough Code, renumbered the section as 1121, and provided:

"The borough council may designate one of said policemen as chief of police. The mayor of the borough shall have full charge and control of the chief of police and the police force, and he shall

direct the time during which, the place where and the manner in which, the chief of police and the police force shall perform their duties, *except that council shall fix and determine the total weekly hours of employment that shall apply to the policemen.*" (Emphasis supplied.)

It seems clear, then, that Bosler stands for the narrow proposition that, until the subsequent amendment to the Borough Code, the power to fix the weekly hours of work of police rested with the mayor.

In Bell v. Flood, supra, the chief of police of the borough advised the mayor that he intended to change the team assignments of patrolmen of the borough police force.[2] Although the mayor ordered him to refrain from so doing, the chief nevertheless made the changes and was thereupon suspended by the mayor for disobedience of the mayor's order. Borough council upheld the suspension in part, as did the civil service board of the borough. Appealing such decision to the Commonwealth Court, the chief contended that primary authority to make changes in team assignments rested with the chief and not the mayor.

The Commonwealth Court, pointing to section 1121 of the Borough Code and, specifically, the paragraph numbered as 2, above, held:

"Our review of the statute quoted above permits us to conclude that it is the mayor's prerogative to determine the *manner* in which the designated duties are to be performed by members of the police force of the borough. Under the facts of this case, we also conclude that the assignment of police officers to teams comes within the meaning

2. We are not advised who initially made such assignments.

of the word 'manner.' The primary responsibility for carrying out the police force functions of the borough clearly falls on the mayor." Id. at 427, 303 A. 2d 244, at 246. (Emphasis in original.)

It is evident, then, that the Commonwealth Court in Bell considered the limited and specific subject of the litigation, the assignment of police officers to teams, against the background of the language of the controlling statute, " . . . the mayor . . . shall direct . . . the manner in which . . . the police force shall perform their duties . . .", and finding that such language devolved upon the mayor the authority to direct the day-to-day operations of the police department, held that such assignment was a part of such daily operations, and accordingly, within the authority of the mayor to determine.

We cannot say, therefore, that the authorities cited by plaintiff are dispositive of the issue before us, or illumine the path we must follow.

In order to obtain additional guidance, therefore, we have reviewed Salopek v. Alberts, 417 Pa. 592, 209 A. 2d 295 (1965), and Albano v. Civil Service Commission of McAdoo, 13 Pa. Commonwealth Ct. 333, 320 A. 2d 385 (1974).

In Salopek, borough council appointed Salopek chief of police, but notwithstanding such appointment, the mayor assigned Salopek to patrolman's duties, directing him to walk a beat. On fifteen occasions, when Salopek refused to perform his duties of a patrolman, the mayor suspended him, and on fifteen occasions, borough council reinstated him. Upon the occasion of the sixteenth such suspension, Salopek instituted an action in mandamus against the mayor. Affirming an order directing the mayor to desist from suspending Salopek and

further directing the mayor to assign Salopek to the duties of chief, the Supreme Court noted that council and not the mayor is empowered by the legislature to establish a police department creating various ranks of police officers, the court then holding;

" . . . such authority necessarily carries with it the right to designate the 'duties' to be performed by police officers of the several ranks." Id. at 598, 209 A.2d at 298. And

"The duties to be performed by the several ranks of police officers are within the prerogative of the council to designate; the manner in which the designated duties are to be performed is the prerogative of the mayor." Id. at 599, 209 A. 2d at 298.

In Albano, the borough council adopted an ordinance directing the chief of police, inter alia, to maintain a daily log of all police activities. The chief apparently advised borough council that he would not comply with such direction in that it was the mayor alone who was in "full charge and control" of the chief of police, citing the language of section 1121 of the Borough Code.

Relying upon the distinction between the words "duties" and "manner" of the performance of those duties as drawn by the Supreme Court in Salopek, the Commonwealth Court found the maintenance of a daily log to be a duty, within the province of council to prescribe.

We readily confess that the four cited cases, forming the only "body" of precedent on the subject, do not give us all the assistance we might otherwise desire. However, when examined together with the applicable statute, several principles do become apparent. The power to establish a police department, to create the office of

chief, to fill that office, and to designate the duties to be performed by the person holding such office, and fix the total weekly hours of employment, is in the borough council. The power to direct the daily operations of the police department and its members, and to prescribe the manner in which such members shall perform the council-designated duties, rests with the mayor. This dichotomy is self-evident upon an examination of the Borough Code.

The power of council to appoint a chief of police, to fix and pay his salary, and to prescribe the number of hours per week that he shall work, must also include the power to fix generally the terms and conditions of his employment.

Nor can it be seriously doubted that a vacation is by simple logic a "term" of employment. In fact, we do not believe the mayor at bar challenges the power of council to grant the chief a vacation. As we perceive the gravamen of the mayor's complaint, he narrowly challenges the authority of council to fix the precise time of that vacation, at least in the face of the mayor's express determination that the chief attend his official duties during the period of vacation as fixed by council. Council, on the other hand, claims sole authority to grant the vacation and fix the time when it shall occur.

We find some merit in both positions. Section 1029 of the Borough Code, 53 P.S. §46029, describing the duties of the mayor, provides that he shall preserve order in the borough. It may well be that in order to properly perform that duty, it might become necessary in limited circumstances for the mayor to require the chief to remain on duty notwithstanding the onset of an ordained vacation. Given a riot in the streets, for example, or other

civil strife or disorder, the Mayor should have the authority to direct the chief to perform regardless of a scheduled vacation. We perceive the Borough Code as sufficiently flexible to warrant such an approach.

At bar, however, the mayor has articulated no such compelling or unusual circumstances and there appears to be no reason to permit the mayor to frustrate the will of council as expressed in its resolution of August 12, 1975.

We say, then, in essence, that inherent in the power of council to hire and appoint a chief of police under the provisions of section 1121 of the Borough Code, is the power to fix the terms and conditions of such employment, including the power to grant a vacation and to determine the time when such vacation shall be taken. We do not find that such view does violence to the provisions of section 1121 vesting in the mayor full charge and control of the chief of police and requiring that the mayor "direct the time during which, the place where and the manner in which" the chief shall perform his duties.

We also say that such power in council to fix a vacation period, best characterized as *general* in nature, should be subject to the *specific* power of the mayor as the borough officer charged with maintaining order to set aside such vacation when circumstances warrant such action.

While we recognize that such result may not be wholly satisfactory in every case, and further, that we cannot point to specific language in the Borough Code commanding such conclusion, at the same time, we cannot say that the Borough Code must be dichotomized as the parties would have us do. Litigation generated by inartfully or

loosely drawn, or otherwise vague statutory language resulting in an overlapping of executive and legislative authority is certainly not novel. We think the case at hand is an example of such overlap, and perceive section 1121 of the Borough Code as providing for such overlapping authority, to be invoked by both the mayor and council under the circumstances noted.

### Vacation With Full Pay

The mayor also challenges the power of borough council to pay the chief his salary while he is on vacation. Such authority is found in section 1125 of the Borough Code, 53 P.S. §46125:

"The borough police . . . shall receive such compensation as shall be fixed by the borough council."

The payment of salary during vacation periods is clearly authorized by section 1125 and within the authority of council. See also section 1006 of the Borough Code, 53 P.S. §46006.

Having determined that borough council properly and lawfully granted the chief a vacation, we find also that council may pay the chief during such vacation under its power to fix the chief's compensation, and the general power of council to authorize expenditures for lawful purposes found in section 1005 of the Borough Code, 53 P.S. §46005.

### Expenses of Chief

Paragraph 10 of the mayor's complaint avers that "pursuant to the resolution of July 15 and August 12 the Defendants will order warrants issued and payments made for Chief Kane's expenses," a sum of approximately $750 to be incurred while the chief attends the conference in Denver.

We note initially that there is no resolution in the record authorizing an appropriation for the payment of such expenses. The fourth recital in the resolution of August 12, 1975, does, however, make reference to such appropriation:

"WHEREAS . . . Borough Council . . . has already authorized the expenditure of eight hundred ($800.00) dollars to cover the expenses to be incurred by the Chief in connection with the conference . . ."; and the minutes of the council meeting of July 15, 1975, make a similar reference:

"Mr. Gray said last month Council did authorize funds for the Chief to go to the conference."

Additionally, the defendants' answer admits that such funds will "in the due course of events" be paid.

We may, therefore, safely assume that an appropriation has, in fact, been made and that the chief's expenses will indeed by paid. Such appropriation and payment are, of course, proper if the purpose therefore is lawful: section 1005 of the Borough Code, 53 P.S. § 46005.

In order to resolve the issue presented, we again turn to familiar principles, ever mindful that the mayor here seeks an injunction prohibiting the payment of such expenses.

In an action seeking an injunction, plaintiff has the burden of establishing the facts which entitle him to the relief sought: Witt v. Steinwehr Development Corporation, 400 Pa. 609, 162 A.2d 191 (1960).

An injunction will not be granted against a municipality unless it appears that the municipality is clearly acting in excess of its powers: Schuck v. City of Reading, 186 Pa. 248, 40 Atl. 310 (1898).

The acts of a municipal body are presumed valid and the invalidity of a municipal act must be established by clear and convincing proof: Plum Township Annexation Case, 178 Pa. Superior Ct. 376, 116 A.2d 260 (1955). It is also presumed that the governing body has not abused its discretion but has acted with reason and in good faith: Bilbar Construction Co. v. Easttown Township Board of Adjustment, 393 Pa. 62, 141 A.2d 851 (1958).

The only basis for the mayor's assertion that such appropriation and payment are improper or unlawful is found in his attack upon the authority of council to grant the chief a vacation. Apparently, the mayor argues that inasmuch as council may not determine the time when the chief may take his vacation, it may neither pay him, nor pay his expenses incurred while in attendance at the conference during such improperly fixed vacation.

We have resolved the primary issue against the mayor, and his attack on that basis has failed. No separate ground of illegality relating to the appropriation for expenses has been advanced. Accordingly, the mayor has failed to overcome the presumption of validity attaching to such act of council: Plum Township Annexation Case, supra.

## CONCLUSIONS OF LAW

1. The Borough Council of the Borough of Phoenixville lawfully and properly adopted the resolution of August 12, 1975, granting the chief of police of the borough a vacation with pay between the 11th and 20th days of September 1975, and plaintiff has failed to carry the burden imposed upon him to show such exigent circumstances as would warrant the mayor setting aside the vacation so ordained by Borough Council.

2. The appropriation and payment by borough council of such sum as is necessary to pay the salary of the chief of police during such period of vacation is a lawful and proper exercise of the authority of borough council under the Borough Code.

3. Plaintiff has failed to overcome the presumption of validity attaching to the appropriation and payment by borough council of expenses to be incurred by the chief of police while attending a conference of the International Association of Chiefs of Police.

4. Plaintiff is not entitled to an injunction restraining the payment of salary to the chief of police while on vacation between the 11th and 20th days of September 1975, or the payment of expenses incurred by the chief while attending the said conference to the extent of the appropriation authorized therefor.

5. Plaintiff's complaint should be dismissed.

## DECREE NISI

And now, December 11, 1975, it is hereby ordered, adjudged and decreed as follows:

1. The temporary injunction heretofore granted is hereby dissolved;

2. The prayer of plaintiff's complaint seeking a permanent injunction is hereby refused and denied;

3. Plaintiff's complaint is dismissed, each party to bear his own costs; and

4. The prothonotary shall enter this decree nisi and give written notice thereof and of the adjudication to the parties to this action or their counsel

of record, and if no exceptions are filed thereto within 20 days after such notice, this decree shall be entered as the final decree herein as of course.