## Barnhart v. Henson

*Denis M. DiLoreto*, for plaintiff.

*Gerald E. Ruth*, for defendant Joseph E. Henson, Jr.

*Robert P. Shoemaker*, for defendant Joseph E. Henson, Sr.

*Rudolf M. Wertime* and *Robert J. Stewart*, for additional defendant Borough.

EPPINGER, *P.J.*, May 30, 1978—Donald E. Barnhart was in the Hotel Greencastle. An encounter lasting for a period of time culminated in the proprietor, Joseph H. Henson, Jr., shooting Barnhart with a pistol. While Barnhart was being held down by Henson and his father and Henson was pointing the pistol at Barnhart, the Greencastle police were notified of the disturbance but did not respond.

Barnhart has filed this action against Henson who has in turn joined the Borough of Greencastle (borough) and four of its policemen as additional defendants. Discovery is completed and the borough has moved for summary judgment and this motion is before the court.

The borough's motion is based on three propositions: (1) that the police department is under the control of the mayor, an independent elected official, (2) that there is no general duty of a borough to provide adequate police protection and (3) that the borough is immune from liability because the policemen are conditionally immune from liability.

The borough attempts to separate itself from the mayor. Council conceives itself to be the borough, while the mayor is not. Under this theory, the borough could not be held legally accountable for the actions of the police department.

But the borough is neither the council nor the mayor. The borough as we conceive it is the total governing authority, consisting of the mayor as executive, and the council as legislative, with some administrative functions. The two are closely intertwined. Section 1121 of The Borough Code of February 1, 1966, P.L. (1965) 1656, 53 P.S. §46121, provides, concerning the police department:

"The borough council may designate one of said policemen as chief of police. The mayor of the borough shall have full charge and control of the chief of police and the police force, and he shall direct the time during which, the place where and the manner in which, the chief of police and the police force shall perform their duties, except that council shall fix and determine the total weekly hours of employment that shall apply to the policemen."

In Salopek v. Roberts, 417 Pa. 592, 209 A. 2d 295 (1965), the court held that The Borough Code empowered council to designate the duties of the police officers while the mayor has authority over the manner of performance. The relationship thus described does not preclude a finding of the master-servant relationship between the borough and the police in the performance of the police duties. On this ground, therefore, summary judgment must be denied.

## GENERAL DUTY TO PROVIDE POLICE PROTECTION

In contending that there is no general duty for the borough to provide adequate police protection the borough has relied upon Williams v. McCormick et al., 64 Luz. 83 (1973). In that case, after plaintiff was beaten up at a dance, she sued the Borough of Kingston because it had failed to provide adequate police protection. The borough was alleged to be negligent generally in ten sub-paragraphs but it was not until plaintiff's brief was filed that the court learned that the police department had been requested to supervise and was supervising the dance. Taking note of this, the court said the brief could not correct the deficiencies in the complaint and added: "As the Complaint now stands, it does not aver facts based on which of the several duties referred to in paragraph 22 [alleging the borough's negligence] are chargeable to defendant Borough and its failure to discharge these duties are averred only in the broadest sense."

The court sustained the demurrer but with the clear implication that had the complaint contained the statements made in the brief the result might

have been different. In this case it is alleged that the police officers knew of the problem in the tavern, that they failed to respond even though they knew that there was a gun involved and that they had in fact received orders that they should not enter taverns to settle such disputes.

This presents an entirely different situation than the one in Williams and we do not think Williams is precedent for granting summary judgment on this ground and having been given no other authority we decline to do so.

## CONDITIONAL IMMUNITY OF POLICE OFFICERS

While acknowledging that the doctrine of governmental immunity has been abolished in the case of Ayala v. Philadelphia Board of Public Education, 453 Pa. 584, 305 A. 2d 877 (1973), the borough contends that it is immune from liability in this suit because policemen have conditional immunity from liability, absent a showing of maliciousness in their actions: Lehnig v. Felton, 235 Pa. Superior Ct. 100, 340 A. 2d 564 (1975). Lehnig was a pothole case. Decedent was driving a truck, struck a pothole, went through the guard rails, crashed over an embankment and was killed. Lehnig's personal representative did not sue the Commonwealth, but did sue the area supervisors and other PennDot employes. The Superior Court sustained the lower court's grant of summary judgment for defendants citing conditional immunity for the PennDot employes because of their status as government officials.

Conditional immunity is granted to these public

officials, the court said, to prevent them from becoming the victims of overcaution, thus affecting their ability to best carry out their public charges, citing Ammlung v. Platt, 224 Pa. Superior Ct. 47, 302 A. 2d 491 (1973). Of course Lehnig's personal representative argued for an abolishment of this immunity as being a trend of the times. Replying the court said at p. 105:

". . . If we were to agree . . . [to] abolish conditional immunity for public officials, we fear that progress would be placed in a permanent holding pattern wherein no advance would be made, but rather officials would be concerned solely with constantly re-checking what has already been done. Many of the benefits government now confers on the populace would stagnate."

It is obvious in our case that the rationale behind conditional immunity does not exist. It is the timidity of the public employes that is being challenged. It is their overcaution that has been called into question.

In a particular case, absent the rationale for the doctrine, we are not persuaded that in today's climate of limitations on immunity, the appellate courts would find that these police officers, if they otherwise qualified, were entitled to conditional immunity. Furthermore there are allegations that the police were operating under instructions from the borough through the mayor in refusing to enter the tavern, and if so, the borough cannot claim to be immune from liability because the police acting under such instructions might be immune from liability.

In addition, a municipal police officer in Pennsylvania is an employe and not a public officer: Com. v. Russo, 177 Pa. Superior Ct. 470, 111 A. 2d 359 (1955); Vega v. Burgettstown Borough, 394 Pa.

406, 147 A. 2d 620 (1958). But even if they were public officials and possessed conditional immunity, this is personal and as such, "it exists for the protection of those particular individuals and not for the protection of the governmental unit that they serve . . ." Cable v. Beaver County, 2 D. & C. 3d 203, 206 (1977). To allow the borough to assert and hide behind the immunity of its employes would result in the continuing existence of governmental immunity which has been abolished by Ayala. Thus, there is no support for summary judgment in this argument.

## MOTION FOR SUMMARY JUDGMENT

Pa.R.C.P. 1035 provides that a motion for summary judgment should be granted only where there is no genuine issue as to any material fact, and all doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment: Ritmanich v. Jonnel Enterprises, Inc., 219 Pa. Superior Ct. 198, 280 A. 2d 570 (1971).

We find genuine issues of fact remain for trial and the motion for summary judgment will be denied.

## ORDER

Now, May 30, 1978, the Borough of Greencastle's motion for summary judgment is denied.