William J. Slifer, Richard A. Nace and George Gimbar, Appellants *v.* Douglas Dodge, et al., Borough Councilmen and Mayor of Borough of Wilson, Appellees.

William J. Slifer, Richard A. Nace and George Gimbar, Appellants *v.* Borough of Wilson, Appellee.

Argued April 9, 1976, before Judges Kramer, Wil-
kinson, Jr., and Blatt, sitting as a panel of three.

*Bernard V. O'Hare,* with him *O'Hare & Heitczman,*
for appellants.

*Louis S. Minotti, Jr.,* for appellee.

OPINION BY JUDGE KRAMER, August 12, 1976:

We affirm the order of the trial court, on the able opinion of Judge WILLIAMS of the Court of Common Pleas of Northampton County, which is reproduced below.

"Plaintiffs seek reinstatement as Chief, sergeant and corporal of police, respectively, in Wilson Borough. Their actions in mandamus and an appeal from the adoption of a borough ordinance eliminating their positions were dismissed at the conclusion of plaintiffs' case.

"The pleadings of record are deficient in that plaintiffs failed to file amended complaints in the form agreed upon before the Court in disposing of the defendants' preliminary objections. At the time of the hearing, therefore, in order not to delay plaintiffs' cause, the Court accepted oral amendments to the complaints and plaintiffs agreed to permit a specific denial by the defendant of any alleged lack of good faith on its part in adopting Ordinance No. 503. Rather obviously, this type of loose practice is not condoned.

"Considering plaintiffs' case most favorable to them, it appears that prior to January 14, 1974, the borough police force consisted of six full-time and eleven part-time patrolmen, including the plaintiffs. On that date Borough Council adopted an ordinance abolishing all offices of the police force and created a department consisting of patrolmen only with the Mayor having full supervision of the force.

"No charges were pending against any of the plaintiffs and no hearings were held by Council or by the borough civil service commission concerning the change in their status.

"The Mayor and the President of Borough Council admitted that the purpose of the ordinance eliminating ranks in the department was to demote the plaintiffs and to reorganize the lines of authority di-

rectly under the Mayor. There was no evidence relating the ordinance to fiscal economies. Although the Mayor told some of the patrolmen that the positions would be kept open and filled at a later time, no action has been taken to re-establish [sic] officers for the force or to appoint any person to such a position.

"Plaintiffs' salaries were not reduced; in fact, in 1974 Nace and Gimbar received pay increases although none of them received the full $700 increment due patrolmen of the force.

"Friction between the Mayor and the Plaintiffs has been of long duration with accusations by the former that the officers did not respond properly to calls, while the officers accuse the Mayor of interfering in police matters. At one point several years ago the Mayor told the members of the police force that Mr. Slifer was chief 'in name only'.

"The ordinance under which plaintiffs originally were appointed failed to define the duties of their offices and Borough Council has never attempted to do so. While each of the plaintiffs testified that their duties now are the same as they were prior to adoption of the ordinance, it is clear that the lines of authority have changed. Each patrolman reports directly to the Mayor, who makes decisions as to the various aspects of the department's work. The basic record-keeping and payroll duties performed by plaintiffs could be done by any patrolman with a minimum of training and do not involve the supervision or responsibility normally associated with ranking officers.

"The Borough's power to create a police department and its officers is set forth in section 1121 of the Borough Code, Act of February 1, 1966, P.L. (1965) , No. 581, 53 P.S. 46121. That section provides inter alia:

" 'The borough council may designate one of said policemen as chief of police. The mayor of the borough shall have full charge and control of the chief of police and the police force, and he shall direct the time during which, the place where and the manner in which, the chief of police and the police force shall perform their duties, except that Council shall fix and determine the total weekly hours of employment that shall apply to the policemen.

. . . .

" 'The borough may, by ordinance, establish a police department consisting of chief, captain, lieutenant, sergeants, or any other classification desired by the council, and council may, subject to the civil service provisions of this act, if they be in effect at the time, designate the individuals assigned to each office, but the mayor shall continue to direct the manner in which the persons assigned to the office shall perform their duties. The mayor may, however, delegate to the chief of police or other officers supervision over and instruction to subordinate officers in the manner of performing their duties.'

"Neither the Legislature nor case law has satisfactorily defined the duties of a chief of police although the term itself indicates that he is to be the head of a department and exercise supervision over it. Stitt vs. Madigan, 52 York L. Reg. 35 (1937). Such duties may be designated by ordinance. Salopek vs. Alberts, 417 Pa. 592, 209 A.2d 295 (1965). However, the statute clearly invests the mayor with primary responsibility for carrying out the police force functions and gives him authority to control 'the manner' in which they perform their duties. This has been held to include such a minor administrative function as the assignment of police officers to teams. Bell vs. Flood, 8 Comm. Ct. 423, 303 A.2d 244 (1973). Thus, in the absence of an ordinance defining their duties, the offi-

cers of a police department have no more authority than that designated by the mayor. Salopek vs. Alberts, supra, at p. 598-599.

"Both sides agree that the decision in this case is controlled by Carey vs. Altoona, 339 Pa. 541, 16 A.2d 1 (1940), and its progeny. Carey sets forth the principle that a municipality has the discretion to discontinue ranks within a police department when deemed no longer necessary or desirable despite the provisions of civil service. The principle is applicable to boroughs and to ranks other than that of chief. Simasek vs. McAdoo Borough, 352 Pa. 306, 42 A.2d 600 (1945); Mamallis vs. Millbourne Borough, 401 Pa. 375, 164 A.2d 209 (1960).

"Plaintiffs argue that the borough eliminated their positions arbitrarily and in bad faith, pointing to the testimony of the Mayor and the President of Borough Council that they were aware that the effect of Ordinance No. 503 was to demote plaintiffs to patrolmen. However, this evidence alone is not sufficient to overcome the presumption of regularity given to official acts. Mamallis vs. Millbourne Borough, supra.

"Under the rule laid down in Carey, good faith or bad faith . . .

"' . . . enters only into the determination of whether the office has really been abolished; whatever be the language of the enactment purporting to effect the abolition, if the office is substantially recreated, though under a different name, with a new appointee performing the same duties as the prior incumbent, the court will invalidate such legislation as being nothing more than a pretense. But where, as here, the position and its emoluments are wholly and unquestionably abolished, and no new rank in the police force, either in name or substance, is created similar to that which is being discontinued, it is not for a Court to say that the motive underlying the enactment of the

ordinance may have been personal or political rather than a disinterested desire to further the public welfare.' pp. 542-543.

"Here, while the motive underlying the ordinance may clearly have been personal and related to the differences between the mayor and the officers, the ordinance clearly abolished all ranks in the department; plaintiffs were retained as patrolmen (cf. McGuckin vs. West Homestead Borough, 360 Pa. 311, 62 A.2d 23 (1948)), their ranks have not been recreated under a different name and no one has been appointed to perform the supervisory duties they had. In fact, each of the plaintiffs agreed that all supervisory responsibility, which is the primary factor distinguishing ranks, now rests with the mayor. Plaintiffs failed to sustain their burden of proof and the action in mandamus to compel their reinstatement was properly dismissed.

"Plaintiffs nevertheless argue that the proceedings should be remanded to Borough Council to provide a hearing for each of the plaintiffs pursuant to the Local Agency Law, Act of December 2, 1968, P.L. 1133, 53 P.S. 11302, and the decision of the Commonwealth Court in Kretzler vs. Ohio Township, [14] Comm. Ct. [236], 322 A.2d 157 (1974). We disagree.

"In Kretzler, the township demoted two officers to patrolmen without affording them a hearing on the charges relied upon by the board. The Commonwealth Court held that even if the officers were not entitled to a hearing on the charges under the Police Tenure Act, 53 P.S. §814, they were entitled to a hearing under the Local Agency Law because the township was within the definition of a local agency and the demotions were an adjudication under Section 302(1), 53 P.S. 11302(1). In the present case, however, no charges were brought against the plaintiffs; the offices themselves were eliminated. As pointed out in Carey, supra, the court will not pry into the motives

of the legislators who voted for passage of such an ordinance.

"Finally, with respect to the statutory appeal from the adoption of the ordinance, entered to No. 24 January Term, 1974, in the Criminal Division, plaintiffs produced no evidence of any procedural irregularity and, therefore, the appeal was properly dismissed."

ORDER

AND Now, this 12th day of August, 1976, it is ordered that the order of the Court of Common Pleas of Northampton County is affirmed.