## O'Donnell v. Borough of South Coatesville

*John L. Lachall,* for plaintiff.
*Michael J. McShane,* for defendants.

WOOD, *J.*, February 14, 1985—This is an appeal from the decision of a local agency pursuant to 2 Pa.C.S. §751 et seq.

Appellant Michael O'Donnell was appointed as a full-time patrolman for the Borough of South Coatesville's Police Department on March 15, 1981. He was promoted to the rank of sergeant on January 1, 1982. At that time the police force consisted of only two full-time police officers, Sergeant

O'Donnell and Beverly Burton, who was chief of police. Chief Burton retired, and on July 29, 1984, Gary Sweigart was appointed chief.

In 1983, the borough became aware that Lukens Steel was petitioning for reassessment of its real property holdings. If reassessment were to be granted, the borough's tax base would be significantly decreased. In anticipation, the borough enacted a 10-mill tax increase. The reassessment went through, and the borough suffered a loss of annual tax revenue totaling $61,000. Even with the millage increase, the borough was still running a deficit of $28,000. At a special meeting of the borough council held on September 25, 1984, council decided to abolish the position of sergeant on the police force and to terminate appellant's employment with the borough as of that date. Appellant's termination was purely for economic reasons and he was notified of council's decision on September 26, 1984.

On October 24, 1984, Sergeant O'Donnell filed an appeal to this court from council's decision to terminate his employment. We remanded the matter to borough council to make a factual record. Thomas R. Wilson, Esq., was appointed as an independent advisor to the borough, and on behalf of council issued a decision which affirmed the prior decision to terminate appellant's employment with the borough. This appeal followed.

The borough rested its decision upon Mamallis v. Millbourne Borough, 401 Pa. 375, 164 A.2d 209 (1960), and Slifer v. Dodge, 26 Pa. Commw. 99, 362 A.2d 471 (1976), which hold that a borough may abolish a position of rank in the police force. In both those cases, however, the persons filling the positions which were abolished remained on the force and did not lose their seniority. Both those cases came under the Borough Code or its predecessor,

Act of February 1, 1966, P.L. (1965) 1636, §101 et seq., 53 P.S. §45101 et seq., while this case is controlled by the provisions of the Police Tenure Act, Act of June 15, 1951, P.L. 586 §1 et seq., 53 P.S. §811 et seq., since the borough has a police force of less than three members.

Section three of the Police Tenure Act, 53 P.S. §813 provides:

"Reduction in Number of Police. — If, for reasons of economy or other reasons, it shall be deemed necessary by any township of the second class, or any borough or township of the first class within the scope of this act, to reduce the number of paid [employees] of the police department, then such political subdivision shall apply the following procedure: (a) If there are any employe[es] eligible for retirement under the terms of any retirement or pension law, then such reduction in numbers shall be made by retirement, if the party to be retired exceeds the maximum age as defined in the act of October 27, 1955 (P.L. 744, no. 222), known as the 'Pennsylvania Human Relations Act': (b) If the number of paid employe[es] in the police force eligible to retirement [sic] is sufficient to effect the necessary reduction in number, or if there are no persons eligible for retirement, or if no retirement or pensions fund exists, then the reduction shall be effected by furloughing the man or men, including probationers, last appointed to said police force. Such removal shall be accomplished by furloughing in numerical order, commencing with the man last appointed, until such reduction shall have been accomplished. In the event the said police force shall again be increased, the employe[es] furloughed shall be reinstated in the order of their seniority in the service."

The act makes no distinction between the members of the police force on the basis of rank, but only on the basis of seniority. In McGuckin v. West Homestead Borough, 360 Pa. 311, 26 A.2d 23 (1948), our Supreme Court noted that:

". . . while the borough council had the power, for reasons of economy, to reduce the number of paid employe[es] of the police department by abolishing the office of chief, it was bound to remove from the force the person last appointed thereto and not a person with rights of seniority merely because the latter was no longer to hold the position of chief."

Thus, even if a police officer is given some rank by council, he still remains a police officer and the subsequent abolition of his position of rank does not deprive him of his seniority status under the Police Tenure Act. In particular, the fact that an officer may be designated "chief" appears to have no significance when council is reducing the force for reasons of economy.\* Since appellant was not the last appointment made to the police force, we enter the following

## ORDER

And now, this February 14, 1985, after argument and upon review of the record, the appeal of Michael O'Donnell is sustained and we remand the matter to the Borough Council of South Coatesville

---

\* We note that the Borough Code, 53 P.S. §46190, unlike the Police Tenure Act, expressly makes the furloughing of police officers on the basis of seniority inapplicable to the chief of police. The same was true of the First Class Township Code, 53 P.S. §55644, until July 8, 1984, the effective date of Act 1984-55, which deleted the language expressly exempting the chief of police from the furlough provisions of that act.

with the direction that they reinstate appellant as a full-time police officer with full pay at the same rate of compensation as he received just prior to his removal, retroactive to September 25, 1984.