# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Antonio Saunders,                           :
                        Appellant           :
                                            :
            v.                              :
                                            :
Michael Munch, Karen Mengel,                :
John Morganelli, James Augustine,           :
John Capobianco, Nick Englesson,            :
Nuria DiLuzio, Edward Andres,               :
Michael Light, Leigh Ann Fisher,            :
Jamie Adams, BB&T Bank,                     :   No. 102 C.D. 2023
Joshua Shapiro, and Jennifer Sletvold       :   Submitted: July 5, 2024


OPINION NOT REPORTED

MEMORANDUM OPINION
PER CURIAM                                      FILED: September 6, 2024


Antonio Saunders (Inmate), an inmate at the State Correctional Institution at Dallas, filed a civil complaint (complaint),[1] *pro se*, in the Court of Common Pleas of Northampton County (trial court) against various law enforcement and judicial personnel who had been involved in his criminal prosecution. The trial court sustained the various defendants' preliminary objections and dismissed the complaint. Inmate filed an appeal with the Superior Court, which transferred the appeal to this Court. Upon review, we affirm the trial court's order dismissing Inmate's complaint.

---

[1] Inmate filed four versions of his complaint, the last of which was titled Amended Complaint. That fourth and final version is the subject of this appeal and is cited as the complaint herein.

## I. Background

In January 2019, Inmate, a New York resident, applied for a $30,000 loan from Truist Bank, incorrectly identified as "BB&T Bank," formerly known as Branch Banking and Trust Company (Bank) in Easton, Pennsylvania, using another person's identity. Appellees' Joint Reproduced Record (JRR) at 25a-26a & 496a.[2] When Inmate appeared at Bank in connection with the pending loan transaction, he was arrested. *Id.* at 25a. He was subsequently prosecuted and convicted of identity theft, forgery, and theft by unlawful taking. *Id.* at 496a. According to Inmate, a proceeding seeking relief from that conviction is pending under the Post Conviction Relief Act (PCRA).[3] Br. for Appellant at 10 (stating "Post Conviction Relief Act Pending").

Inmate filed the complaint in the trial court alleging various instances of wrongful conduct relating to his arrest, prosecution, and conviction. JRR at 22a-62a. He named as defendants, "in their individual and official capacities," Michael Munch, a detective with the Colonial Regional Police Department in Bethlehem, Pennsylvania (Det. Munch); Karen Mengel, Court Reporter for the trial court (Ct. Rep. Mengel); the Honorable John Morganelli, District Attorney (now Judge) of Northampton County (DA Morganelli); James Augustine, an Assistant District Attorney of Northampton County (ADA Augustine); Hon. John Capobianco, a Magisterial District Judge with chambers in Nazareth, Pennsylvania (MDJ Capobianco); the Honorable Nicholas Englesson, a Magisterial District Judge with

---

[2] Appellees submitted what would normally be a supplemental reproduced record, but, presumably because Appellant was not required to file a reproduced record, Appellees have designated their filing as a reproduced record and numbers its pages as such. We cite Appellees' joint filing using their page designations.

[3] 42 Pa.C.S. §§ 9541-9546.

chambers in Bethlehem, Pennsylvania (MDJ Englesson); Nuria DiLuzio, Chief Public Defender of Northampton County (CPD DiLuzio); Edward Andres, an Assistant Public Defender of Northampton County (APD Andres); Michael Light, an Assistant Public Defender of Northampton County (APD Light); Clerk of Court Leigh Ann Fisher (Clerk Fisher); Jamie Adams, Bank's Branch Manager at 3704 Nazareth Highway, Easton (Branch Mgr. Adams); Bank; Joshua Shapiro, Attorney General (now Governor) of Pennsylvania (AG Shapiro); and the Honorable Jennifer Sletvold, a Judge in the trial court (Judge Sletvold). *Id.* at 22a-24a.

The complaint alleged, in a rambling fashion, violations of various constitutional rights of Inmate by various Appellees, asserting that various Appellees were guilty of

> "[d]iscriminatively [sic] prosecuting [Inmate]; trespassing under the disguise of the color of state law criminal prosecution and [Appellees'] violating [Inmate's] constitutional rights of [a]rt.1, ss [sic] sec. 1, 8 and 26 of the Pa. [C]onst. [(Pa. Const. art. I, §§ 1, 8 , and 26)], U.S. [C]onst. 4th, 8th and 14th Amendments [(U.S. Const. amends. IV, VIII, XIV)] and the [sic] Pa.R.Crim.P. 540, 573, 541 and 581(I); subjecting [Inmate] to illegal restraint's [sic], false arrest, illegal confiscation of [Inmate's] real person and real personal property by was [sic] of the premise that [Appellees] have the authority to do so when [a]rticle V of the Pennsylvania [C]onstitution is repealed in it's [sic] entirety and those provisions of schedules No. 1 and No. 2 are repealed to the extent they are inconsistent with this Article; [t]hereby no saving clause schedule applicable to criminal prosecution and after [Bank, Br. Mgr. Adams, and Det. Munch] acted in concert to arrest [Inmate] on false charges, slandered, libeled and defamed [Inmate] as described in 42 Pa.C.S. [§] 8343; on or about January 28, 2019; without any independent reasonable suspicion of probable cause, and trespassing, false arrest, intruding, illegally searching and seizure of [Inmate] on false charges and affidavit of probable cause; thereby accusing [Inmate] of a crime that

3

he did not commit and initiation [sic] the charges in which the named [Appellees] acted in concert, in collusion in a nefarious scheme to over take [sic] [Inmate's] person and personal property and then under the premise to [d]iscriminatively [sic] prosecute [Inmate] on charges without having no [sic] basis in authority; while acting under color of law, 42 U.S.C. ss [sic] 1983.

JRR at 24a-25a. The specific acts on which Inmate based his civil complaint included a statement in the criminal case's affidavit of probable cause that Inmate had applied for the loan in person at Bank, although testimony later established that the application was initially made by telephone; an alleged review of evidence at the police station without signing a form to maintain the chain of custody; imposition of "a $100,000.00 cash ransom bail"; alleged improper advice to Inmate to waive his preliminary hearing; failure to release Inmate despite no finding of probable cause at a preliminary hearing; alleged defense representation of Inmate without his permission; alleged inadequate legal representation of Inmate; and alleged deletion of a portion of a transcript that Inmate insists contained a ruling the judge in his criminal case later stated had not been made. JRR at 25a-54a.

Inmate alleged as his "[i]njuries"

[f]alse [a]rrest, illegal detention, illegal restraints of liberty, cruelty, cruel and unusual punishment; deprived of equal protection of law, deprived [sic] due process of law, libel, slander, defamation, [a]rbitrary and capricious treatment, [d]iscriminatively [sic] prosecution, bias, prejudice [sic] treatment, racism, threats, harassment, shock, wanton disregard towards rights, conniving, frauds, fraud on the court, prosecuted [sic] without any basis of authority, misuse of process, abuse of process, abuse of jurisdiction, assault's [sic], deception, trickery, misrepresentation, false impersonation, theft, mail theft, mail fraud, false pretenses, theft by unlawful taking, deliberate indifference, 42 U.S.C. ss [sic] 1983, set up, illegal commitment's [sic], false pretense, illegal representations, false representations without notice nor

4

> [sic] consent, inviolation [sic] of court order, framed [sic], lien on property, levy on natural person and property, heartache, headaches, pain, drugged [sic], [COVID]-19, shackles and chains, fabricated [a]ffidavit; stress, false information, full restraint's [sic], kidnapped [sic], captured [sic] corporation, robbery of property, civil right's [sic] and liberty, mental anguish, trespass, conflict's [sic], intrusions, loss of works [sic], business, depress [sic], false charges, intrusions and other injuries.

JRR at 55a. Inmate sought a declaration that his criminal conviction was void; he also demanded money damages totaling hundreds of millions of dollars. *Id.* at 57a-62a.

The trial court sustained the preliminary objections and dismissed the complaint in an order without an opinion. JRR at 493a. After Inmate filed his notice of appeal, the trial court entered an order pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(b), directing Inmate to file a concise statement of errors complained of on appeal (1925 statement). *Id.* at 494a. Inmate filed a 1925 statement 10 pages long, listing, again in rambling fashion, 19 alleged errors by the trial court. JRR at 495a & 499a-508a. The trial court thereafter filed its opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(a). The trial court opined that Inmate had waived all issues on appeal by filing a 1925 statement "so prolix and abstruse that if there [was] any issue buried therein, it [was] so well hidden that [the trial court could not] find it." JRR at 495a. The trial court opined further that, to the extent it could discern the bases of Inmate's assertions of error, they were baseless, as "[e]ven the most cursory review of [the complaint] discloses that it fails to set forth any cause of action against any defendant. . . ," in that Inmate's subsequent convictions absolved the Bank and Bank Mgr. Adams of any liability for pre-arrest statements

5

made to police, and all the other defendants were immune from Inmate's claims. *Id.* at 496a-97a.

## II. Discussion

## A. Preservation of Issues

As a threshold matter, we acknowledge the trial court's opinion that Inmate has failed to preserve any issues for appeal because of his defective statement of errors on appeal. We agree with the trial court's assessment.

Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure requires a trial court, upon receipt of a notice of appeal from its decision, to provide a written opinion explaining the reasons for its decision. Pa.R.A.P. 1925(a). Rule 1925(b)(4) provides, in pertinent part:

> (b) Direction to file statement of errors complained of on appeal; instructions to the appellant and the trial court.— If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("[1925(b)] Statement").
>
> . . . .
>
> (4) Requirements; waiver.
>
> > (i) The [1925(b)] Statement shall set forth only those errors that the appellant intends to assert.
> >
> > (ii) The [1925(b)] Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge . . . .
> >
> > . . . .

6

> (iv) The [1925(b)] Statement should not be redundant or provide lengthy explanations as to any error. Where non-redundant, non-frivolous issues are set forth in an appropriately concise manner, the number of errors raised will not alone be grounds for finding waiver.
>
> (v) Each error identified in the [1925(b)] Statement will be deemed to include every subsidiary issue that was raised in the trial court . . . .

Pa. R.A.P. 1925(b)(4). Because the appellant's statement of errors is necessary to allow the trial court to address those errors and, in turn, to allow meaningful review by the appellate court, a defective statement of errors will result in waiver of the appellant's issues; "a [statement of errors] which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [statement of errors] at all." *Commonwealth v. Dowling*, 778 A.2d 683, 686-87 (Pa. Super. 2001).[4]

Here, the trial court posited that Inmate's statement of errors was so vague and rambling as to impede the trial court's ability to address the alleged errors in a meaningful fashion.[5] *See* JRR 495a-96a. This Court's review of the statement

---

[4] Although not binding on this Court, opinions of the Superior Court offer persuasive authority where they address analogous issues. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

[5] The length and rambling nature of Appellant's statement of errors is also problematic. In *Eiser v. Brown & Williamson Tobacco Corp.*, 938 A.2d 417 (Pa. 2007), a plurality of our Supreme Court opined that the number of issues in a 1925(b) statement should not, standing alone, result in waiver. *Id.* at 427 n.16. The current Rule 1925(b)(4)(iv) reflects that principle. *See* Pa.R.A.P. 1925(b)(4)(iv). However, a 1925(b) statement must not be "so lengthy that it does not meet the goal of narrowing down the issues previously raised to the few that are likely to be presented to the appellate court without giving the trial judge volumes to plow through." *Commonwealth v. Reeves*, 907 A.2d 1, 2-3 (Pa. Super. 2006); *see also Jones v. Jones*, 878 A.2d 86, 89-90 (Pa. Super. 2005) (7-page statement listing 29 issues in narrative form showed lack of good faith effort to comply with Rule 1925(b); "such 'voluminous' statements do not identify the issues that [the

of errors confirms that it is difficult to determine with any degree of certainty the true nature of the errors being asserted. *See id.* at 499a-508a. The trial court opined in understandable frustration that Inmate had failed to preserve any issues for appeal. *Id.* at 495a-96a. Nonetheless, to the extent that it was able to glean from Inmate's statement the errors he was asserting, the trial court addressed them to the best of its ability.

We, likewise, will address the errors asserted in Inmate's brief, to the extent that we are able to provide meaningful review. Inmate's brief lists 11 alleged errors by the trial court.[6] We will address each.[7]

### B. Statements by Bank Appellees and Det. Munch

In his first assertion of error, Inmate contends that the trial court abused its discretion by sustaining the preliminary objections of Bank and Branch Mgr. Adams (Bank Appellees) and Det. Munch, all of whom Inmate accuses of having falsely stated that Inmate forged a loan application. The apparent basis for Inmate's argument is the statement by Det. Munch, in his affidavit of probable cause, that Inmate had signed a loan application with a false name, when actually, according to

---

a]ppellant actually intends to raise on appeal . . . "). Here, Appellant's 10-page statement of 19 perceived errors forced the trial court to wade through an unreasonable amount of content in its attempt to discern what errors Appellant was asserting.

[6] To the extent Inmate claims that his statement of errors or brief raises claims beyond those identified by the trial court, they are waived. *See Dowling*; *Eiser*.

[7] To the extent that this Court's analysis differs in any respect from that of the trial court, we note that we may affirm on any basis that is supported by the record. *Commonwealth v. Rensel*, 315 A.3d 248 (Pa. Cmwlth. 2024) (citing *Ario v. Ingram Micro, Inc.*, 965 A.2d 1194, 1200 (Pa. 2009)). We also note, as a general observation on Inmate's claims, that to the extent he is attempting to assert any allegation of a claim under 42 U.S.C. § 1983 or other violation of his federal constitutional rights, any such claim is barred because he was convicted and that conviction has not been reversed, expunged, or invalidated. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

the subsequent testimony of Branch Mgr. Adams, Inmate's initial loan application was made by telephone. Inmate's assertion of error is without merit.

## 1. Bank Appellees' Preliminary Objection

Inmate asserted a claim for defamation against Bank Appellees, alleging that they falsely stated he had forged a loan application, in that Bank Mgr. Adams later stated that the application was initially made by telephone.[8] Bank Appellees filed preliminary objections raising the statute of limitations, privilege, and the coordinate jurisdiction rule.

A claim for defamation is subject to a one-year statute of limitations. 42 Pa.C.S. § 5523(1). Bank Appellees point out that Inmate did not file his first complaint until more than one year after the alleged defamation and did not first allege defamation until his final complaint filed three years after his arrest. Although the statute of limitations is an affirmative defense normally raised in new matter, a court may address it on preliminary objections where its applicability is clear on the face of the complaint and the plaintiff does not file a preliminary objection to the preliminary objection asserting the statute of limitations. *See Laskaris v. Hice*, 247 A.3d 87, 89 n.3 (Pa. Cmwlth. 2021) (quoting *Petsinger v. Dep't of Lab. & Indus., Off. of Vocational Rehab.*, 988 A.2d 748, 758 (Pa. Cmwlth. 2010)). Here, the complaint alleges that Inmate was arrested on January 28, 2019, based on false information from Bank Appellees. JRR at 24a-25a. The trial court's docket indicates that Inmate's first complaint was filed on February 24, 2020, more than a year later. *Id.* at 5a. Thus, the application of the statute of limitations was clear on the face of the complaint. Moreover, Inmate has not asserted on appeal that Bank

---

[8] Appellant does not explain whether or why applying for a loan in another person's name by telephone would make him any less culpable than applying in person.

Appellees should not have raised the statute of limitations by preliminary objection. We agree with Bank Appellees that Inmate's defamation claim was barred by the statute of limitations and was properly dismissed. Accordingly, we need not reach Bank Appellees' additional preliminary objections relating to privilege and the coordinate jurisdiction rule.[9]

### 2. Det. Munch's Preliminary Objection

Inmate further asserts that the trial court wrongly dismissed his claim against Det. Munch, who Inmate insists falsified an affidavit of probable cause by stating that Inmate had signed another person's name on a loan application. Inmate insists he never signed an application and points to testimony by Branch Mgr. Adams that Inmate made the loan application by telephone. However, Inmate does not explain how this alleged discrepancy supposedly harmed him.

An alleged misstatement in an affidavit of probable cause is material only if the statement is essential to the warrant, not if it merely strengthens the warrant application. *See Commonwealth v. Cameron*, 664 A.2d 1364, 1367 (Pa. Super. 1995). If the affidavit sets forth sufficient facts to support a probable cause finding without the misstatement, the misstatement is immaterial. *See Commonwealth v. Yucknevage*, 390 A.2d 225, 227 (Pa. Super. 1978).

Noticeably absent from Inmate's complaint and brief is any assertion that he did not seek a loan in the name of another person whose identity he had stolen; rather, his averments relate solely to the absence of his signature on the loan application. Likewise absent from the complaint is any averment by Inmate that he

---

[9] We note, however, that the discrepancy between using a false name in a signed loan application and doing so in an application made by telephone is equally immaterial to Appellant's defamation claim as it is to the probable cause affidavit discussed in the next section.

could not have been arrested and convicted for seeking a loan by identity theft through a loan process initiated in a telephone application. In short, Inmate focuses on an alleged misstatement in the affidavit of probable cause but does not explain whether or how it was actually material to his arrest and conviction. Therefore, we conclude that the trial court did not err in sustaining the preliminary objection of Det. Munch relating to the affidavit of probable cause.

## C. Effectiveness of Defense Counsel

In his second assertion of error, Inmate argues that the trial court abused its discretion by dismissing his claim against APD Andres, who Inmate insists acted negligently in advising Inmate to waive a preliminary hearing and in failing to advocate for a dismissal of the criminal charges because there had allegedly been a finding of no probable cause at a preliminary hearing.[10] This argument, too, is meritless. The law is clear that any averment relating to ineffective assistance of counsel may be pursued only in a proceeding in the original sentencing court under the PCRA. *See* 42 Pa.C.S. § 9543(a)(2)(ii) (providing for post-conviction relief where the defendant was convicted because of ineffective assistance of counsel); 42 Pa.C.S. § 9542 (stating that the PCRA provides "the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist . . ."). Inmate's claim against APD Andres could not be asserted in a separate civil action. Therefore, it was properly dismissed.

---

[10] We note the logical inconsistency between Inmate's averment that he waived a preliminary hearing and the averment that there was a finding of no probable cause made at a preliminary hearing.

11

## D. Failure to Dismiss by Magisterial District Judges

In his third assertion of error, Inmate argues that the trial court abused its discretion by dismissing Inmate's claims against MDJ Englesson and MDJ Capobianco (MDJ Appellees). Inmate insists the MDJ Appellees acted without jurisdiction and committed abuse of process by ordering Inmate's detention, in that Inmate had been arrested without a warrant or probable cause. In addition, in his eleventh assertion of error, Inmate contends that MDJ Englesson issued process without probable cause. Inmate's assertions of error by the trial court are without merit.

We agree with the trial court that MDJ Appellees are entitled to absolute judicial immunity. *See Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 367 (Pa. 2021) (quoting *Guarrasi v. Scott*, 25 A.3d 394, 405 n.11 (Pa. Cmwlth. 2011) (stating that "judicial immunity is not only immunity from damages, but also immunity from suit" and declining to reach other issues, as judicial immunity was dispositive)); *Wright v. Doyle* (Pa. Cmwlth., No. 405 M.D. 2019, filed Mar. 7, 2023),[11] slip op. at 4-5 (addressing issue of judicial immunity first because it barred not only liability, but the suit itself, and declining to reach other preliminary objections where judicial immunity was dispositive of the case). In *Wright*, this Court explained judicial immunity as follows:

> Judges are immune from liability for damages when performing judicial acts, even if they err or perform an act with malice, provided they do not lack jurisdiction. *Chasan* [*v. Platt*, 244 A.3d 73,] 81 [(Pa. Cmwlth. 2020)]. Thus, "[j]udicial immunity requires a two-part analysis: first, whether the judge has performed a judicial act; and second, whether the judge has some jurisdiction over the

---

[11] This unreported decision is cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

subject matter before [him]." *Id.* (citing *Langella v. Cercone*, . . . 34 A.3d 835, 838 (Pa. Super. 2011) . . .).

The first part of the judicial immunity analysis is whether the [j]udge[] performed a judicial act. When evaluating whether an act is a judicial one, we consider "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Petition of Dwyer*, . . . 406 A.2d 1355, 1361 ([Pa. ]1979) (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 . . . (1978)).

. . . .

The second part of the judicial immunity analysis is whether the [j]udge[] had subject matter jurisdiction. The Judicial Code[12] sets forth the subject matter jurisdiction of the courts of common pleas. The Judicial Code states: "Except where exclusive original jurisdiction of an action or proceeding is by statute or by general rule adopted pursuant to section 503 (relating to reassignment of matters) vested in another court of this Commonwealth, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings." 42 Pa.C.S. § 931(a) . . . .

*Id.*, slip op. at 4-5 (footnote omitted). Further, judicial immunity extends to magisterial district judges as well as other judges. *Heicklen v. Hoffman*, 761 A.2d 207, 209 (Pa. Cmwlth. 2000).

Inmate attempts to avoid the effect of immunity by asserting that MDJ Appellees acted without jurisdiction. We disagree. They clearly had subject matter jurisdiction over Inmate's criminal arraignment and preliminary hearing. *See* 42 Pa.C.S. § 1515(a)(4) (providing that magisterial district judges have subject matter "to preside at arraignments, [to] fix and accept bail, . . . and to issue warrants and

---

[12] 42 Pa.C.S. §§ 101-9913.

13

perform duties of a similar nature, including the jurisdiction of a committing magistrate in all criminal proceedings").

Inmate complains about the MDJ Appellees' rulings, conduct, and handling of his criminal case. However, all of the alleged conduct was performed within the scope of their judicial duties and, thus, within the scope of their subject matter jurisdiction. Accordingly, the MDJ Appellees are entitled to absolute immunity, and the trial court properly dismissed the claims levied against them.

### E. Consent to Defense Representation

In his fourth assertion of error, Inmate argues that the trial court erred in dismissing his claim against APD Light. Inmate avers that APD Light represented him "fraudulently" by appearing at a bail reduction hearing on Inmate's behalf without Inmate's prior knowledge or consent after CPD DiLuzio had obtained court approval to withdraw from the case. Inmate's entire argument on this issue is a single paragraph containing a bare averment with no explanation or citation of authority. Therefore, it is waived for failure to develop it in Inmate's brief. *See* Pa.R.A.P. 2119; *Blue Pilot Energy, LLC v. Pa. Pub. Util. Comm'n*, 241 A.3d 1254, 1271 (Pa. Cmwlth. 2020) (quoting *In re Condemnation ex rel. Dep't of Transp.*, 76 A.3d 101, 106 n.8 (Pa. Cmwlth. 2013) (stating that "[a] party's failure to develop an issue in the argument section of its brief constitutes waiver of the issue")).

Moreover, assuming that Inmate is suggesting that APD Light acted improperly at the hearing, such a suggestion amounts to an allegation of ineffective assistance of counsel. Such a claim cannot be brought outside of a PCRA proceeding, as explained in Section C above. *See* 42 Pa.C.S. §§ 9542 & 9543(a)(2)(ii).

14

For these reasons, the trial court did not err in dismissing Inmate's claim against APD Light.

### F. Alleged Theft of Mail

In his fifth assertion of error, Inmate argues that the trial court erred in dismissing Inmate's claim that Clerk Fisher committed federal mail theft and mail fraud by removing from the mailbox of the Northampton County Jail some mail that Inmate had directed to the United States District Court for the Eastern District of Pennsylvania. Inmate further argues that the trial court erred by dismissing his claim against Judge Sletvold, in that she allegedly acted outside her jurisdiction by directing Clerk Fisher to steal Inmate's mail and by ruling on matters directed to a federal court. We discern no error in the trial court's dismissal of these claims.

A plaintiff may not file a private complaint for violation of a federal statute unless that statute creates a private cause of action. *See Winton v. Pa. Dep't of Corr.*, 263 A.3d 1240, 1244 (Pa. Cmwlth. 2021) (explaining that an inmate was prohibited from bringing a claim for violation of a federal statute that did not provide a private right of action) (additional citation omitted). Here, there are no private causes of action for alleged violations of federal laws regarding mail theft and mail fraud. *See Addlespurger v. Corbett*, 461 Fed. App'x 82, 87 (3d Cir. 2012) (stating that "there is no private cause of action for a violation of the federal mail and wire fraud statutes . . ."); *Ball v. Sisley*, Civil No. 1:11-CV-877, 2012 U.S. Dist. LEXIS 71056, *2 (M.D. Pa. May 22, 2012) (stating that "[t]he criminal offenses of theft and obstruction of mail do not . . . provide for a private right of action for the violation of these penal statutes") (first citing *Schowengerdt v. Gen. Dynamics Corp.*, 823 F.2d 1328 (9th Cir. 1987); and then citing *Contemporary Mission, Inc. v. U.S. Postal*

15

*Serv.*, 648 F.2d 97 (2d Cir. 1981)). Therefore, the trial court did not err in dismissing Inmate's claim against Clerk Fisher and Judge Sletvold relating to alleged mail theft and fraud.

### G. Prosecutorial Conduct of ADA Augustine and DA Morganelli

In his sixth, seventh, and eights assertions of error, Inmate maintains that the trial court erred in dismissing his claims against ADA Augustine and DA Morganelli, both of whom, according to Inmate, committed improper acts. All of these assertions of error are meritless, and we address them together.

As Inmate implicitly acknowledges, a prosecutor is entitled to absolute immunity for any action taken in his official capacity. *See Durham v. McElynn*, 772 A.2d 68, 70 (Pa. 2001). As our Supreme Court explained in *Durham*,

> [t]he public interest requires that district attorneys be able to carry out their duties without being hampered by civil suits claiming damages for actions taken in their official capacities. The public would indeed suffer if the prosecution of criminals were impeded, as would be the case if district attorneys were not accorded absolute immunity.

*Id.*

Inmate posits that ADA Augustine acted outside his position and acted as a police investigator by examining evidence and, while doing so, failing to sign the proper form to preserve the chain of custody. We disagree. A district attorney's duties and responsibilities include investigating as well as prosecuting crimes. *See, e.g.*, *Hoffman v. Borough of Macungie*, 63 A.3d 461, 472 (Pa. Cmwlth. 2013) (observing that the "broad discretion vested in [a district attorney's] office to *investigate* and prosecute crimes on behalf of the Commonwealth is indisputable") (emphasis added). Because ADA Augustine was performing his duty by

16

investigating the criminal charges against Inmate, he enjoyed absolute immunity from suit relating to his conduct in doing so.

The other acts Inmate alleges by ADA Augustine and DA Morganelli, such as improper treatment of evidence and acting without probable cause, even if purportedly improper, related to the prosecution of Inmate's criminal charges and, therefore, fell squarely within the scope of their official duties. Accordingly, ADA Augustine and DA Morganelli enjoyed absolute immunity, and the trial court did not err in dismissing Inmate's claims against them.

**H. Transcript Claims**

In his ninth assertion of error, Inmate argues that the trial court erred in dismissing his claim that Judge Sletvold and Ct. Rep. Mengel acted together to alter the transcript of Inmate's pretrial hearing. He insists that Judge Sletvold denied his suppression motion at the hearing but later stated that she had not ruled on it. According to Inmate, the ruling was omitted from the pretrial hearing transcript. We find no error in the trial court's dismissal of this claim.

Regarding the claim against Judge Sletvold, she is entitled to absolute judicial immunity for the reasons stated in Section D above. *See Brooks*, 259 A.3d at 367; *Guarrasi*, 25 A.3d at 405 n.11. Therefore, the trial court properly dismissed Inmate's claim against Judge Sletvold.

Regarding the claim against Ct. Rep. Mengel, although this Court was unable to locate any Pennsylvania state court decision on point, we find persuasive the federal decisions ruling that a court reporter, as a judicial employee, is entitled to qualified quasi-judicial immunity. For example, in *Murrell v. Consiglio*, 841 Fed. App'x 357, 360 (3d Cir. 2021), the court distinguished *Antoine v. Byers & Anderson,*

*Inc.*, 508 U.S. 429, 434-37 (1993), in which the United States Supreme Court held that a court reporter was not entitled to absolute judicial immunity; the Third Circuit held in *Murrell* that, notwithstanding the *Antoine* holding, court reporters are still entitled to qualified immunity. *Murrell*, 841 Fed. App'x at 360. The rationale for immunizing court reporters is concern "that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." *Stout v. Naus*, Civil No. 4:CV-09-0380, 2009 U.S. Dist. LEXIS 53063, *9 (M.D. Pa. June 23, 2009) (additional quotation marks and citations omitted).

Notably, the *Murrell* court relied on *Green v. Maraio*, 722 F.2d 1013, 1019 (2d Cir. 1983), in which the United States Court of Appeals for the Second Circuit held that a court reporter was entitled to qualified immunity for following a judge's alleged instruction to alter a transcript. *See Murrell*, 841 Fed. App'x at 360 (citing *Green*). This case is closely analogous. Here, Inmate alleges that Ct. Rep. Mengel followed an instruction from Judge Sletvold to alter Inmate's pretrial hearing transcript. We find the holding of *Green* persuasive and likewise conclude that a court reporter is immune from a claim based on allegedly following a judge's instruction to alter a transcript.

In addition, as this Court explained in *Elkington v. Pennsylvania Department of Corrections* (Pa. Cmwlth., No. 478 M.D. 2018, filed May 27, 2021), a claim averring an improper omission from a transcript is subject to dismissal where the claim asserts "no factual disputes that are authentic, real, or free from pretense that would directly affect the outcome of th[e] matter . . . ." *Id.*, slip op. at 16. Here, Inmate maintains that Judge Sletvold denied his pretrial suppression motion but later stated she had not ruled on such a motion. Inmate fails to explain what material

18

difference exists between denial of the motion and failure to rule on the motion that would have directly affected the outcome of his criminal trial. Therefore, the trial court properly dismissed Inmate's claim against Judge Sletvold and Ct. Rep. Mengel for this additional reason.

### I. Arrest Warrant and Probable Cause

In his tenth assertion of error, Inmate argues that the trial court erred in dismissing another claim by Inmate against Det. Munch. According to Inmate, Det. Munch violated Inmate's constitutional rights by falsely arresting and searching him without either a warrant or probable cause, then failed to give Inmate a receipt and maintain the chain of custody regarding cash that was seized from Inmate at the time of his arrest. This claim is without merit.

As Det. Munch cogently explains in his brief,

> [u]nder both [United States] Supreme Court and Commonwealth Court precedent, a plaintiff seeking damages for an allegedly unconstitutional imprisonment or conviction must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, or declared invalid by a state tribunal authorized to make such determinations. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Weaver v. Franklin C*[*nty.*], 918 A.2d 194, 202 (Pa. Cmw[l]th. 2007).
>
> . . . .
>
> Any additional unconstitutional searches and seizures allegedly performed by Det.[] Munch, as well as alleged violations of police department evidence procedures, are also *Heck*-barred. *Keeling v. Att*[*'*]*y Gen*[.] . . . , 575 Fed. App'x 16, 18 (3d Cir. 2014) (holding that Fourth Amendment search and seizure[] claims were *Heck*-barred where plaintiff claimed they resulted in his unlawful conviction).

Br. for Det. Munch at 7-8. We agree with Det. Munch that Inmate may not bring a collateral action alleging police violation of his constitutional rights resulting in his conviction, where that conviction has not been reversed on direct appeal, expunged by executive order, or declared invalid. *See Heck*. Accordingly, the trial court did not err in dismissing Inmate's claim against Det. Munch.

## J. Claims Against the Attorney General

Finally, although AG Shapiro is named in the caption and the complaint, Inmate on appeal has not developed any assertion of error in the trial court's dismissal of the claim against AG Shapiro. Accordingly, we need not discuss that claim.

## III. Conclusion

Based on the foregoing discussion, the trial court's order is affirmed.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Antonio Saunders,                           :
                          Appellant          :
                                             :
              v.                             :
                                             :
Michael Munch, Karen Mengel,                 :
John Morganelli, James Augustine,            :
John Capobianco, Nick Englesson,             :
Nuria DiLuzio, Edward Andres,                :
Michael Light, Leigh Ann Fisher,             :
Jamie Adams, BB&T Bank,                      :      No. 102 C.D. 2023
Joshua Shapiro, and Jennifer Sletvold        :


**PER CURIAM**                    **O R D E R**


          AND NOW, this 6th day of September, 2024, the order of the Court of

Common Pleas of Northampton County, dated September 26, 2022, is AFFIRMED.